PASCUAL MÁRQUEZ VEGA, ETC., demandantes y recurridos, *v.* HÉCTOR MARTÍNEZ ROSADO, ETC., demandados y peticionarios.

*Número:* O-84-60      *Resuelto:* 15 de mayo de 1985

*Charles De Mier Leblanc,* de *Miranda Cárdenas, De Corral .& Rodríguez,* abogado de los peticionarios; *Rodolfo R. Hernández Ramos,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El Dr. Héctor Martínez Rosado, especialista en obstetricia y ginecología dedicado a la práctica privada de su profesión, acordó con su *paciente privado* la Sra. Luz M. Díaz Cruz la realización de una intervención quirúrgica con el propósito de extirparle a ésta su útero y un ovario. A esos propósitos, la señora Díaz Cruz ingresó en el Hospital Lafayette, una de varias instituciones hospitalarias que le habían concedido al doctor Martínez Rosado el "privilegio" de utilizar sus facilidades para que éste pudiera atender a sus pacientes privados.

Realizada la mencionada intervención quirúrgica, la señora Díaz Cruz, su esposo Pascual Márquez Vega y la sociedad legal de gananciales compuesta por ambos, radicaron una demanda de daños y perjuicios en contra del doctor Martínez Rosado, el Hospital Lafayette y sus respectivas compañías aseguradoras. En cuanto al doctor Martínez Rosado se alegó que éste, debido a su negligencia y falta de pericia le causó a la señora Díaz Cruz "una fístula vésico vaginal detrás del cuello de la vejiga un poco hacia el lado izquierdo en el trígono vesical" (Ap. 2), lo que le ha causado una seria irregularidad en la eliminación de líquidos de su cuerpo, condición que no ha podido ser corregida a pesar de haber sido sometida a una nueva intervención quirúrgica por parte de un especialista en urología. En lo referente al codemandado Hospital Lafayette, se alegó en la demanda radicada, en síntesis, que dicha institución hospitalaria le es responsable a la parte demandante por cuanto devengó beneficios al permitirle al doctor codemandado utilizar sus facilidades para llevar a cabo la citada in-

tervención, "actuación tan falta de previsibilidad que desemboca en negligencia". (Ap. 3.)

Finalizado el procedimiento de descubrimiento de prueba, el codemandado Hospital Lafayette radicó una solicitud de sentencia sumaria, predicada la misma en su total falta de responsabilidad por lo que alegadamente le había acaecido a la parte demandante. En apoyo de lo anteriormente expresado, el Hospital Lafayette esgrimió como argumentos que el doctor Martínez Rosado no era empleado del hospital; que la señora Díaz Cruz era una paciente privada del mencionado facultativo médico, habiendo ingresado al hospital en tal capacidad; que le había concedido al doctor Martínez Rosado el privilegio de utilizar sus facilidades para atender pacientes privados por razón de ser dicho médico uno de reconocida competencia y capacidad;[1] y que, según el descubrimiento de prueba realizado, la parte demandante no contaba con prueba alguna que demostrara negligencia por parte del hospital.

En la oposición a la solicitud de sentencia sumaria que radicaron, los demandantes *se limitaron a expresar* que la responsabilidad del Hospital Lafayette *"depende de la negligencia que en su día se le imponga al co-demandado Doctor Héctor Martínez Rosado*, porque los daños que ocasionó dicho codemandado pudo haberlos previst[o] el Hospital Laffayette y debido a que éste *se benefició económicamente* al brindarle

---

[1] Surge de la solicitud que radicara el doctor Martínez Rosado ante el Hospital Lafayette con el propósito de que se le permitiera el utilizar sus facilidades para atender pacientes privados que el referido doctor se graduó de la Escuela de Medicina de la Universidad de Puerto Rico en el año 1962, habiendo realizado su "internado" en el Hospital Universitario del Centro Médico de P. R.; que la *residencia* en obstetricia y ginecología la realizó en el referido Hospital Universitario de 1963 a 1966, habiéndole sido concedida su licencia para practicar la medicina en P. R. en el año 1966; fue *profesor* en el Hospital Municipal del Centro Médico de 1966 a 1971; el doctor Martínez Rosado es un Diplomado por la Academia de Obstetricia y Ginecología por razón de haber aprobado los exámenes (*Boards*) correspondientes; por último, para la fecha de los hechos a que se contrae la demanda —1982— en adición al Hospital Lafayette, tenía privilegios para atender pacientes privados en varios hospitales de Puerto Rico.

sus facilidades a la co-demandante Luz M. Díaz Cruz, paciente del co-demandado Doctor Héctor Martínez Rosado, facilidades que fueron pagadas por ella". (Énfasis suplido.) (Ap. 31.)

El Tribunal Superior de Puerto Rico, Sala de Guayama,[2] mediante resolución al efecto y citando como precedente "por analogía" la doctrina establecida por este Tribunal en el caso de *Martínez* v. *Chase Manhattan Bank*, 108 D.P.R. 515 (1979), declaró sin lugar la solicitud de sentencia sumaria radicada por el Hospital Lafayette. Inconforme, dicho co-demandado acudió ante este Tribunal vía recurso de *certiorari*. Expedimos el auto solicitado. Estando en condiciones de resolver el recurso,[3] procedemos a así hacerlo.

## I

En las primeras décadas del presente siglo los hospitales eran meramente unas instituciones que proveían unos servicios básicos en el cuido de la salud,[4] no brindando servicios médicos como parte de los mismos. V. R. Fuchs, *Who Shall Live?*, New York, Basic Books, Inc., Pubs., 1974, pág. 57 *et seq.;* W. H. Payne, *Recent Deveolpments Affecting a Hospital's Liability for Negligence of Physicians*, 18 S. Tex. L. J. 389 (1977). Poco a poco, sin embargo, las instituciones hospitalarias fueron ampliando los servicios que rendían al público, inclusive contratando facultativos médicos como sus empleados. Al así hacerlo, comenzaron a proyectarse hacia la comunidad como una alternativa en momentos de enfermedad, acostumbrándose el público a percibirlos como un centro de tratamiento médico integral. A. F. Southwick, *The Hospital as an Institution—Expanding Responsibilities Change*

---

[2] Hon. Carlos J. Rodríguez De Jesús, Juez.

[3] La parte recurrente sometió el recurso por los fundamentos expuestos en la petición de *certiorari* que radicara. La parte demandante y recurrida sometió el mismo por los fundamentos expuestos en la resolución que dictara el tribunal de instancia.

[4] Tales como alojamiento, comidas y servicio de enfermería.

*Its Relationship with the Staff Physician,* 9 Cal. W.L. Rev.
429, 434–435 (1973); *Bing* v. *Thunig,* 143 N.E.2d 3 (N. Y.
1957). Hoy en día es una incuestionable realidad el hecho de
que una persona que se enferma tiene la opción de elegir entre
acudir a la oficina de un médico privado o encaminarse direc-
tamente a un hospital para que dicha institución le provea la
atención médica que su caso requiere.

Esta nueva "alternativa" con que cuenta el público —pro-
ducto la misma en cierto sentido de los desarrollos tecnoló-
gicos habidos y costo de los mismos en el campo de la medi-
cina, de las presiones del público consumidor, de la regulación
de la "actividad" por parte del estado, y de la complejidad de
las nuevas relaciones internas entre hospitales y doctores— ([5])
ha sido causa en Estados Unidos de un profundo cambio
en la doctrina respecto a la responsabilidad que tiene el hos-
pital en relación con los pacientes y los actos de mala práctica
profesional ocurridos dentro de sus facilidades. *Hannola* v.
*City of Lakewood,* 426 N.E.2d 1187 (Ohio App. 1980); *Beeck*
v. *Tucson General Hospital,* 500 P.2d 1153 (Ariz. App. 1972);
*Ybarra* v. *Spangard,* 154 P.2d 687 (Cal. 1944).

A pesar de que hoy en día no existe una regla mayorita-
ria bien definida, la tendencia actual en Estados Unidos es
hacia la imposición, cada día en mayor grado, de responsabi-
lidad a los hospitales. En su consecuencia, encontramos que
la doctrina moderna americana tiende a responsabilizar a las

---

([5]) Hoy en día rinden servicios en un hospital médicos que son em-
pleados de la institución; médicos que aun cuando no son empleados propia-
mente del hospital, son miembros de la facultad (*staff*) y como tales no
sólo están autorizados a practicar su profesión en el hospital respecto a sus
pacientes privados, sino que están sujetos a ser llamados "en consulta" por
el hospital respecto a cualquier paciente del mismo; médicos a quienes el
hospital les ha concedido una especie de "franquicia" para operar con ex-
clusividad un servicio médico especializado dentro de la institución; y mé-
dicos a quienes el hospital les ha concedido el privilegio de utilizar sus fa-
cilidades para atender sus pacientes privados, etc. Véase a E. Hayt, L. Hayt
y A. H. Groeschel, *Law of Hospital, Physician, and Patient,* 2da ed. rev.,
Nueva York, Hospital Textbook Co., 1952, págs. 88–97.

referidas instituciones no sólo por los actos negligentes cometidos por los médicos empleados y agentes de los mismos bajo la teoría de *respondeat superior*,([6]) Comentario, *The Hospital-Physician Relationship: Hospital Responsibility for Malpractice of Physicians*, 50 Wash. L. Rev. 385 (1975); D. W. Louisell y H. Williams, *Medical Malpractice*, Nueva York, Ed. Matthew Bender, 1985, Vol. I, Sec. 16.01; *Sendjar* v. *Gonzalez*, 520 S.W.2d 478 (Tex. 1975), sino que el hospital puede resultar responsable ante el paciente —bajo la llamada doctrina de "responsabilidad corporativa"— aun por actos negligentes cometidos por médicos a quienes el hospital meramente le ha concedido el privilegio de utilizar sus facilidades para atender a sus pacientes privados. M. W. Ellison, *The Hospital's Responsibility for Its Medical Staff: Prospects for Corporate Negligence in California*, 8 Pac. L.J. 141 (1977); A. F. Southwick, *The Hospital's Responsibility*, publicado en R. M. Goodman y F. L. Tozer, *Modern Hospital Liability— Law and Tactics*, Nueva York, Ed. Practising Law Institute, 1969, pág. 350; Nota, *Hospital Corporate Liability: An Effective Solution to Controlling Private Physician Incompetence?*, 32 Rutgers L.J. 342 (1979); E. J. Swan, *Hospital Liability for Corporate Negligence*, 30 Med. Trial Tech. Q. 275 (1984).

Bajo la referida doctrina de responsabilidad corporativa, por ejemplo, los hospitales han sido adjudicados responsables si no fueron cuidadosos y diligentes al seleccionar y otorgar al médico el referido privilegio, *Mauer* v. *Highland Park Hospital Foundation*, 232 N.E.2d 776, 779 (Ill. App. 1967);

---

([6]) Es un dato sumamente interesante el que en sus comienzos la doctrina americana consideraba que las instituciones hospitalarias eran inmunes a demanda en daños y perjuicios por actos de negligencia cometidos, inclusive, por médicos que eran sus empleados. En algunas jurisdicciones de Estados Unidos se resolvió que por ser el conocimiento de los médicos uno sumamente especializado no era posible "controlar" el juicio de un médico, razón por la cual el hospital no era responsable. Véanse a manera de ejemplo: *Arkansas Midland R. Co.* v. *Pearson*, 135 S.W. 917 (Ark. 1911) y *Norton* v. *Hefner*, 198 S.W. 97 (Ark. 1917).

Anot., 51 A.L.R.3d 981 (1973); E. Hayt, L. Hayt y A. H. Groeschel, *Law of Hospital, Physician, and Patient,* 2da ed. rev., New York, Hospital Textbook Co., 1952, pág. 88; al hospital no exigir que dichos médicos se mantengan al día mediante cursos de mejoramiento profesional, *Purcell* v. *Zimbelman,* 500 P.2d 335 (Ariz. App. 1972); R. K. Lisko, *Hospital Liability under Theories of Respondeat Superior and Corporate Negligence,* 47 UMKC L. Rev. 171 (1978); al hospital fallar en no supervisar adecuadamente el trabajo de los referidos médicos y, en su consecuencia, no detectar un acto obvio de impericia médica o, de así haberlo hecho, no hacer nada al respecto; y, al permitir que continúe utilizando sus facilidades un médico que ha incurrido en una serie de actos de impericia médica demostrativos de incompetencia profesional. *Darling* v. *Charleston Community Memorial Hospital,* 211 N.E.2d 253 (Ill. 1965); *Ziegler* v. *Superior Court of State, etc.,* 640 P.2d 181 (Ariz. 1982); *Purcell* v. *Zimbelman,* ante; *Tucson Medical Center, Incorporated* v. *Misevch,* 545 P.2d 958 (Ariz. 1976).

Por último, tenemos que igualmente han sido encontrados responsables los hospitales ante un paciente bajo la doctrina de "autoridad o responsabilidad aparente"; esto es, cuando el paciente ha acudido en primera instancia al hospital en busca de ayuda y ha entendido, o le han dado la impresión, que todos los facultativos médicos que le atienden son empleados del hospital, independientemente de que así lo sean o no. *Seneris* v. *Haas,* 291 P.2d 915 (Cal. 1956); *Mduba* v. *Benedictine Hospital,* 384 N.Y.S.2d 527 (App. 1976); *Mehlman* v. *Powell,* 378 A.2d 1121 (Maril. App. 1977); *Grewe* v. *Mt. Clemens General Hospital,* 273 N.W.2d 429 (Mich. 1978); Comentario, *op. cit.;* Anot., 69 A.L.R.2d 305, 321 (1960).

## II

■ En cuanto a la responsabilidad que tienen los hospitales respecto a sus pacientes ha sido, y es, doctrina firme-

mente establecida en esta jurisdicción que dichas instituciones le deben a sus pacientes aquel grado de cuidado que ejercería un hombre prudente y razonable en condiciones y circunstancias similares. *Hernández* v. *La Capital*, 81 D.P.R. 1031 (1960); *Ramos Orengo* v. *La Capital*, 88 D.P.R. 315 (1963); *Soc. de Gananciales, etc.* v. *Presbyterian Hosp.*, 88 D.P.R. 391 (1963); *Lugo Pérez* v. *Santo Asilo de Damas*, 89 D.P.R. 247 (1963); *Oliveros* v. *Abréu*, 101 D.P.R. 209 (1973); *González* v. *E.L.A.*, 104 D.P.R. 55 (1975); *López* v. *Hosp. Presbiteriano, Inc.*, 107 D.P.R. 197 (1978); *Crespo* v. *H. R. Psychiatric Hosp., Inc.*, 114 D.P.R. 796 (1983); *Núñez* v. *Cintrón*, 115 D.P.R. 598 (1984).

■ Un examen de la referida jurisprudencia revela que en las ocasiones en que este Tribunal ha estimado procedente el imponerle responsabilidad a un hospital por actos de mala práctica profesional respecto a pacientes recluidos en el mismo, siempre ha mediado negligencia por parte de *empleados* de la institución; [7] en su consecuencia, la responsabilidad del hospital ha estado predicada en la doctrina de responsabilidad vicaria. Véase el Art. 1803 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5142.

Ahora bien, los mismos acontecimientos que han causado que la doctrina americana respecto a la responsabilidad de los hospitales haya evolucionado a pasos agigantados se han hecho sentir en nuestra jurisdicción. Nuestra doctrina, en su consecuencia, ha ido igualmente desarrollándose. Así, por ejemplo, en *Hernández* v. *Asoc. Hosp. del Maestro*, 106 D.P.R. 72, 80, 81 (1977), [8] expresamos que este Tribunal reconocía "que los hospitales han ido asumiendo una responsabilidad creciente en relación con la calidad de los servicios rendidos

---

[7] Ya hayan sido éstos médicos u otro personal del hospital.

[8] Caso en que el hospital demandado había suspendido al doctor de su "facultad médica", retirándole el privilegio de utilizar sus facilidades, debido a alegados actos por parte del médico constitutivos de negligencia.

por los médicos de su facultad" y que, por lo tanto, las juntas directoras de dichas instituciones "deben velar por que los mecanismos que aseguren la calidad del cuidado de los pacientes sean establecidos y mantenidos celosamente". En *Núñez* v. *Cintrón*, ante, (⁹) pág. 605, expresamos que la "visión tradicional de concebir a un hospital como simplemente una estructura dotada de facilidades físicas, personal y equipo para la práctica del arte de la medicina se ha ido desvaneciendo", y que desde "años recientes el deber de cuidado hacia el paciente no sólo corresponde a su médico sino al hospital".

■ Ello no obstante, nunca antes nos habíamos enfrentado a un caso, como el presente, donde se alega que el acto de impericia médica es atribuible *únicamente* a un médico que no es empleado del hospital y en que la institución hospitalaria, alegadamente, está totalmente ajena a la negligencia supuestamente cometida por el médico. Debemos resolver, en específico, cuál es la responsabilidad de un hospital, si alguna, por actos de impericia médica cometidos exclusivamente por un médico, no empleado del hospital, al cual facultativo la institución le ha concedido el privilegio de utilizar sus facilidades para atender sus pacientes privados.

Somos del criterio que la correcta solución del problema estriba en definir a quién el paciente le ha confiado —en primera instancia y de manera principal— el cuidado de su salud: al hospital o al médico. *Grewe* v. *Mt. Clemens General Hospital*, ante; A. J. Bueres, *Responsabilidad Civil de los Médicos*, Buenos Aires, Ed. Ábaco de Rodolfo Depalma, 1979, págs. 48, 125–131.

■ En la primera alternativa, o sea, aquélla en que la persona acude directamente a la institución hospitalaria en

---

(⁹) Caso donde este Tribunal resolvió que habían sido negligentes en el tratamiento de un paciente tanto el hospital, por conducto de sus empleados, como el médico cirujano a quien el hospital le había concedido el privilegio de uso de sus facilidades.

busca de ayuda médica y el hospital le "provee" a ésta los facultativos médicos que lo atienden, nos inclinamos hacia la imposición de responsabilidad solidaria al hospital en unión al médico, no empleado, responsable del acto de impericia médica. [10] *Grewe* v. *Mt. Clemens General Hospital*, ante. Bajo este cuadro de hechos, somos de la opinión que no hace diferencia alguna que el doctor que atienda al paciente sea o un empleado propiamente del hospital, o uno a quien el hospital le haya concedido una "franquicia" para brindar servicios médicos especializados a los pacientes del mismo, o uno que es miembro de la facultad (*staff*) del hospital y a quien éste llama en consulta para atender al paciente, etc. *Mehlman* v. *Powell*, ante; *Hannola* v. *Lakewood*, ante, págs. 1190-1192; Nota, *Independent Duty of a Hospital to Prevent Physicians' Malpractice*, 15 Ariz. L. Rev. 953, 967 (1973).

En primer lugar, en esta clase de situación el hospital es el que "provee" el servicio del médico en particular, no teniendo el paciente usualmente opción o participación alguna en dicha selección. *Mehlman* v. *Powell*, ante; *Mduba* v. *Benedictine Hospital*, ante; *Restatement (Second) of Torts* Sec. 429. Hasta cierto punto se puede afirmar que en esta clase de situación el hospital le está "garantizando" al paciente que ese doctor, o cualquiera otro que lo atienda bajo esas circunstancias, es uno competente y apto para prestarle ayuda médica. Posiblemente debido a esa "garantía implícita" por parte del hospital es que el paciente acude a esa institución en particular y no a otra o a un médico en su oficina privada. *Hannola* v. *City of Lakewood*, ante; *Beeck* v. *Tucson General Hospital*, ante; Goodman y Tozer, *op. cit.*, págs. 329-332. En segundo término, desde el punto de vista del paciente, a quien él tiene "de frente" es a la institución como tal, no a médicos distintos e independientes los unos de los otros y del hospital. En otras palabras, frente al paciente que llega a sus predios y a

---

[10] Ello sin perjuicio de la causa de acción que pueda tener el hospital contra el médico responsable del acto de impericia alegadamente cometido.

la comunidad en general, el hospital hoy en día se proyecta como una institución de servicios médicos completos y no como una estructura donde habitan profesionales de la salud que no tienen nada que ver los unos con los otros. Bajo estas circunstancias no es irrazonable el aplicar la doctrina de "autoridad o responsabilidad aparente". *Núñez* v. *Cintrón*, ante; *Cf. Berríos* v. *U.P.R.*, 116 D.P.R. 88 (1985); *Magwood* v. *Jewish Hospital & Med. Ctr., etc.*, 408 N.Y.S.2d 983 (1978); *Beeck* v. *Tucson General Hospital*, ante; *Purcell* v. *Zimbelman*, ante; *Tucson Medical Center, Incorporated* v. *Misevch*, ante; *Hospital Corporate Liability: An Effective Solution*, *op. cit.*, pág. 358; Payne, *op. cit.*, págs. 398–399; D. J. Slawoski, *Do the Courts Understand the Realities of Hospital Practices?*, 22 St. Louis U.L.J. 452, 457–458 (1978). En tercer lugar, no hay duda de que cuando el "paciente" acude directamente al hospital la relación principal que se establece es entre éste y la administración del hospital. En esa situación, el médico es considerado un auxiliar del hospital, y la institución debe responder por el daño causado por el médico. J. Santos Briz, *Derecho de Daños*, Madrid, Ed. Rev. Der. Privado, 1963, págs. 374–375. Por último, a pesar de que el médico no empleado pudiera ser considerado como un "contratista independiente", no hay duda de que el hospital resulta principalmente beneficiado por la labor que realiza el médico, por lo que entendemos que la institución debe responder por los actos negligentes de aquél. *Cf. Martínez* v. *Chase Manhattan Bank*, 108 D.P.R. 515 (1979).

■ Bajo la segunda alternativa —aquélla en que la persona va directamente donde el médico a su oficina privada, acuerda con éste sobre el tratamiento a recibir, y acude a un hospital en particular por recomendación del médico, meramente debido a que dicha institución hospitalaria es una de varias donde el doctor que ha escogido tiene el privilegio de utilizar las facilidades de la misma— la situación es un tanto diferente. Bajo este cuadro de hechos la relación principal que

se establece es entre el "paciente" y el médico, siendo de carácter suplementaria e incidental aquella que se crea entre el paciente y el hospital. En esta situación el hospital, *como regla general*, no debe responder por el acto negligente exclusivo del médico no empleado, a quien en primera instancia y de manera principalísima el paciente confió el cuido de su salud. ([11])

No obstante lo anteriormente expresado, razones de política pública exigen que, aun en esta clase de situaciones, se le imponga al hospital la *obligación continua* de velar por la salud de sus pacientes a través de: (a) una cuidadosa selección de los médicos a quienes, en la forma que sea, les ha conferido el privilegio de utilizar sus facilidades; *Johnson* v. *Misericordia Community Hospital*, 294 N.W.2d 501 (Wis. App. 1980); *Mitchell County Hospital Authority* v. *Joiner*, 189 S.E.2d 412 (Ga. 1972); *Pederson* v. *Dumouchel*, 431 P.2d 973 (Wash. 1967); *Mauer* v. *Highland Park Hospital Foundation*, ante, págs. 776, 779; Anot., 51 A.L.R.3d, ante; Hayt, Hayt y Groeschel, *op. cit.*, pág. 88; (b) exigiendo que dichos médicos se mantengan al día a través de cursos de mejoramiento profesional; *Purcell* v. *Zimbelman*, ante; Lisko, *op. cit.*; (c) "manteniéndose al tanto" (*monitoring*) del trabajo de los referidos médicos e interviniendo, cuando ello sea posi-

---

([11]) El fundamento utilizado por el tribunal de instancia en la resolución objeto de este recurso —la aplicación, por analogía, a los hechos del presente caso de nuestra decisión en *Martínez* v. *Chase Manhattan Bank*, 108 D.P.R. 515 (1979), a los efectos del "beneficio económico" recibido por el hospital— no puede sostenerse por, entre otras, dos razones. En primer lugar, el hacerlo significaría imponerle responsabilidad *en todo caso* a los hospitales por cuanto dichas instituciones usualmente reciben beneficios económicos en relación con *todos* sus pacientes. En segundo término, como sabemos el caso citado trata sobre el beneficio que recibe el principal en relación con el trabajo realizado por el contratista independiente. Bajo la alternativa ahora en discusión —donde el paciente acude en primera instancia al médico y luego acude al hospital por recomendación del médico— el principal sería precisamente el médico y el hospital vendría siendo el "contratista independiente".

ble, ante un acto obvio de impericia médica por parte de los mismos; *Fridena* v. *Evans*, 622 P.2d 463 (Ariz. 1981); *González* v. *Nork*, 131 Cal. Rptr. 717 (App. 1976); *Corleto* v. *Shore Memorial Hospital*, 350 A.2d 534 (N.J. 1975); *Darling* v. *Charleston Community Memorial Hospital*, ante; *Ziegler* v. *Superior Court of State, etc.*, ante; *Purcell* v. *Zimbelman*, ante; *Tucson Medical Center, Incorporated* v. *Misevch*, ante; Ellison, *op. cit.*, pág. 142; (d) descontinuando el privilegio concedido ante repetidos o crasos actos de mala práctica por parte de uno de esos médicos; *Johnson* v. *Misericordia Community Hospital*, ante; Swan, *op. cit.*; y (e) manteniéndose razonablemente al día en cuanto a los adelantos tecnológicos habidos. *Elam* v. *College Park Hospital*, 183 Cal. Rptr. 156 (App. 1982); Southwick, *The Hospital's Responsibility, op. cit.*, pág. 358. *Hospital Corporate Liability: An Effective Solution, op. cit.*, págs. 356–375. Y es que se puede afirmar que un hospital que así no actúe prácticamente es responsable, por "complicidad", del acto de impericia médica cometido en sus facilidades por el doctor con su paciente privado. En síntesis, como expresáramos en *Núñez* v. *Cintrón*, ante, pág. 605, la tendencia moderna es a considerar que "el deber de cuidado hacia el paciente no sólo corresponde a su médico sino al hospital".

Las leyes y reglamentos vigentes en nuestra jurisdicción relativos a esta materia fomentan esta nueva visión y enfoque. Así, por ejemplo, tenemos que se exige que la "facultad médica" de un hospital deberá establecer y exigir unos requisitos mínimos para poder formar parte de la misma,([12]) y que los organismos directivos de los hospitales deberán "ejerce[r] el debido cuidado en la selección de los médicos a quienes se autorice a ejercer en el hospital", 24 R.&R.P.R. sec. 18–92; que los médicos deberán renovar cada tres (3) años su licen-

---

([12]) "Regla, Reglamentación y Normas para la Construcción, Funcionamiento y Mantenimiento de Hospitales", Reglamento 319 de 19 de septiembre de 1957. Véase 24 R.&R.P.R. sec. 18–1 *et seq.*

cia, ello de acuerdo con los cursos sobre educación continua que se les requiere, 20 L.P.R.A. sec. 52c; estando inclusive el Secretario de Salud facultado para (a) censurar, (b) poner a prueba, (c) suspender o revocar la licencia de una institución hospitalaria, (d) requerir la instrumentación de mejoras o facilidades, ello como consecuencia de casos de impericia médica cometidos en dichas instituciones, 24 L.P.R.A. sec. 333g-1; y establecer, inclusive, que cualquier persona que dirija una institución hospitalaria que viole los requisitos exigidos por las leyes y reglamentos relativos a esta materia será culpable de delito menos grave, 24 L.P.R.A. sec. 333n, y en ciertas circunstancias, de delito grave, 20 L.P.R.A. sec. 39.

## III

De acuerdo a los hechos del presente caso, los cuales no están en controversia, la codemandante Luz M. Díaz Cruz era una paciente privada del Dr. Héctor Martínez Rosado. La referida dama acudió al Hospital Lafayette por razón de la recomendación que a esos efectos le hiciera el citado galeno ya que dicho hospital era una de las instituciones hospitalarias que le había concedido a aquél el privilegio de utilizar sus facilidades para atender pacientes privados. Alegadamente la señora Díaz Cruz fue víctima de un acto de impericia médica por parte del doctor Martínez Rosado. No hay alegación alguna respecto a supuestos actos de negligencia cometidos por personal del Hospital Lafayette.

Conforme la norma establecida en el presente caso, un hospital no responde por un acto exclusivo de negligencia de un médico no empleado cometido en la persona de su paciente privado a menos que la institución hospitalaria hubiera sido "neligente" al concederle —y mantenerle— al doctor el privilegio de utilizar sus facilidades para atender pacientes privados, o cuando no hubiera intervenido para evitar, de ello ser posible, el mencionado acto de impericia médica, o cuando las fa-

cilidades y equipo del hospital hubieran tenido relación con el acto de impericia alegadamente cometido.

Como hemos visto, en el presente caso se trata de un profesional de la salud obviamente cualificado que, inclusive, ha sido profesor en su especialidad y quien no tiene historial alguno de actos previos de mala práctica profesional. En segundo término, tenemos que el acto de impericia que se imputa es uno, que de haber sido cometido, no podía haber sido evitado por el hospital ya que el mismo alegadamente ocurre en el transcurso de la intervención quirúrgica practicada por el doctor Martínez Rosado en la persona de la señora Díaz Cruz. Por último, el alegado acto de impericia tampoco tiene nada que ver con que el equipo y facilidades con que contaba el Hospital Lafayette en ese momento fuera inadecuado.

Por las razones antes expresadas, *procede revocar la resolución de fecha 22 de diciembre de 1983 emitida por el tribunal de instancia en el presente caso. Se dictará sentencia desestimatoria de la demanda radicada en cuanto al codemandado y recurrente Hospital Lafayette.*

El Juez Presidente Señor Trías Monge concurre en el resultado sin opinión.