

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Miriam N. Fonseca, Rosa M. Fonseca y Felicita Rodríguez<br><br>Recurridas<br><br>v.<br><br>Hospital Interamericano de Medicina Avanzada (HIMA) Dr. Guillermo Tirado Menéndez Dr. Arnulfo Santana y SIMED<br><br>Peticionarios | Apelación<br><br>2012 TSPR 3<br><br>184 DPR ____ |

Número del Caso: AC-2010-62

Fecha: 5 de enero de 2012

Tribunal de Apelaciones:

Región Judicial de Caguas Panel X

Juez Ponente:

Hon. Troadio González Vargas

Abogados de la Parte Peticionaria:

Lcda. Sonia Ortega Rivera

Abogados de la Parte Recurrida:

Lcdo. Alfredo Cruz Resto

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Miriam N. Fonseca, Rosa M.
Fonseca y Felicita Rodríguez

     Recurridas

        v.                           AC-2010-62    Certiorari

Hospital Interamericano de
Medicina Avanzada (HIMA);
Dr. Guillermo Tirado Menéndez;
Dr. Arnulfo Santana y SIMED

     Peticionario

Opinión del Tribunal emitida por el Juez Presidente señor
HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 5 de enero de 2012.

En esta ocasión, tenemos otra oportunidad de aplicar a un pleito de daños y perjuicios un contrato de transacción mediante el cual se libera de toda responsabilidad a unos médicos que incurrieron en impericia. Nos corresponde determinar si el acuerdo también tuvo el efecto de liberar al único codemandado que no formó parte de su otorgamiento: el Hospital. Por entender, que el Tribunal de Apelaciones erró al aplicar la doctrina de cosa juzgada, cuando sólo correspondía poner en vigor el referido contrato, revocamos.

I.

La Sra. Miriam N. Fonseca, la Sra. Rosa M. Fonseca y la Sra. Felícita Rodríguez (las

demandantes) instaron una acción de daños y perjuicios por impericia médica contra el Dr. Guillermo Tirado Menéndez, el Dr. Arnulfo Santana, el Sindicato de Aseguradores de Impericia Médica (S.I.M.E.D.), asegurador de los referidos médicos, y el Centro Médico del Turabo Inc. h/n/c, HIMA San Pablo (HIMA), a raíz de la muerte de la Sra. Iris Fonseca. El foro primario declaró con lugar la demanda y responsabilizó solidariamente a los médicos demandados. No obstante, **desestimó la reclamación contra HIMA**, tras concluir que las enfermeras y el personal del Hospital siguieron las instrucciones de los médicos, quienes no eran empleados de HIMA. Finalmente, valoró los daños y sufrimientos mentales de las demandantes en $370,000.00.

Inconformes, las demandantes solicitaron reconsideración para que se le impusiera a HIMA responsabilidad solidaria con los médicos codemandados, al amparo de la doctrina de autoridad aparente. En específico, recalcaron que la señora Iris Fonseca era originalmente paciente de otro hospital y que fue llevada a HIMA por ser el hospital más cercano. Por su parte, HIMA no compareció, a pesar de habérsele concedido un término para que se expresara. En consecuencia, el foro primario emitió una resolución en la que impuso responsabilidad solidaria a HIMA por las actuaciones de los médicos autorizados a prestar servicios profesionales en dicha institución. **HIMA no solicitó reconsideración o revisión de este dictamen.**

Luego de varios trámites procesales, en 2009, las demandantes llegaron a un "Acuerdo Transaccional Privado" con

el doctor Tirado Menéndez, el doctor Santana y S.I.M.E.D. Mediante el acuerdo, estos codemandados fueron liberados de responsabilidad respecto a cualquier otro asunto relacionado con la muerte de la señora Iris Fonseca. La causa del contrato de transacción fue la cantidad límite de las pólizas de los referidos médicos, a saber, $350,000.00. En específico, el inciso seis (6) de este contrato establece que, con este pago, la parte demandante quedaba satisfecha "por cualquier obligación que pudiese imponerse a ellos por los daños alegados o no, que surjan del evento que propició la presentación de la demanda. Bajo ningún concepto, las partes comparecientes pagarán cantidad alguna adicional a las especificadas en este documento".

Respecto al trámite ulterior contra HIMA, este acuerdo transaccional dispuso lo siguiente:

> 7.[…] La parte demandante expresamente se reserva íntegramente el derecho de proseguir cualquier trámite post-sentencia en contra del codemandado HIMA, el cual queda en el pleito y no ha sido relevado de responsabilidad por este acuerdo ni podrá beneficiarse del mismo. Al presente acuerdo le será aplicable todo lo establecido en Szendrey Ramos v. Hospicare, Inc., 158 D.P.R. 648 (2003), 2003 T.S.P.R. 18, y en US Fire Insurance Company y otros v. Autoridad de Energía Eléctrica y otros, 175 D.P.R. ___, 2008 T.S.P.R. 160, a los fines de que el codemandado **HIMA**, el cual queda en el pleito y contra quien prosiguen los trámites post-sentencia, **no será responsable de forma alguna por los daños que pudieran ser atribuibles a y/o hayan sido causados por los codemandados comparecientes. El codemandado HIMA sólo responderá a la parte demandante por los daños causados por sus propias acciones u omisiones negligentes, las acciones u omisiones negligentes de sus empleados y/o de aquellas personas por las cuales deba responder bajo cualquier doctrina legal vigente en Puerto Rico**, o por la participación que en su momento se establezca compete a HIMA pagar

según la sentencia emitida por el Tribunal de Primera Instancia. (Énfasis suplido.)

Así las cosas, las demandantes llevaron a cabo gestiones extrajudiciales para requerir de HIMA el balance pendiente de la sentencia del foro primario. Ante la negativa de pago por parte de HIMA, las demandantes acudieron ante el Tribunal de Primera Instancia y solicitaron una orden de embargo en ejecución de sentencia en su contra.

Por su parte, HIMA se opuso a la solicitud de embargo y adujo que, aunque el foro de primera instancia le impuso responsabilidad solidaria junto a los médicos codemandados, no fue cocausante de los daños sufridos por las demandantes. Asimismo, señaló que, conforme a la cláusula siete (7) del contrato de transacción, las demandantes se reservaron el derecho de continuar contra HIMA únicamente **por la propia negligencia de HIMA.** Por lo tanto, alegó que no procede el embargo en su contra, pues el foro sentenciador determinó que HIMA no fue negligente. Las demandantes se opusieron a las alegaciones de HIMA invocando nuevamente la doctrina de autoridad aparente. Asimismo, señalaron que la señora Fonseca llegó a HIMA a través de la Sala de Emergencias.

Así las cosas, el 28 de octubre de 2009, el foro primario emitió una resolución en la que declaró sin lugar la solicitud de embargo contra HIMA. Esta resolución resaltó que los doctores demandados no eran empleados del hospital. Esto, pues el doctor Tirado Menéndez fue contratado por la corporación que opera la Sala de Emergencia de HIMA y el doctor Santana tenía privilegios para atender pacientes allí.

Además, recalcó que no se presentó evidencia alguna en cuanto a la supervisión o falta de ella por parte de los facultativos médicos, empleados de HIMA, de dichos médicos que resultaron responsables por impericia. Tampoco se presentó evidencia sobre actos previos de impericia profesional de esos doctores. Además, concluyó que HIMA no tenía responsabilidad porque sus empleados actuaron bajo las directrices de los doctores Tirado y Santana. Por ello, se denegó el embargo y cobro de lo reclamado a HIMA.

Inconformes, las demandantes acudieron ante el Tribunal de Apelaciones. Dicho foro concluyó que lo resuelto sobre la responsabilidad solidaria del Hospital era cosa juzgada y no podía alterarse. Por ello, revocó la resolución del foro primario.

Tras haber solicitado reconsideración sin éxito, HIMA acude ante nos mediante recurso de apelación y solicita que revoquemos la decisión del foro intermedio. HIMA nos plantea que, aunque reconoce el efecto de la resolución emitida en el 2007, que le impone un deber de solidaridad junto a los codemandados, nunca se adjudicó un grado de culpa en su contra. Por lo tanto, al relevar a los médicos de su culpa mediante el acuerdo transaccional, las demandantes, a su vez, relevaron a HIMA de cualquier reclamación. En síntesis, HIMA no impugna la aplicación de la doctrina de cosa juzgada; solo nos solicita que reconozcamos que fue liberada mediante el acuerdo de transacción.

Examinado el recurso de apelación presentado por HIMA, decidimos acogerlo como *certiorari* y expedirlo. Habiendo comparecido ambas partes, procedemos a resolver.

## II.

### A.  Responsabilidad de los hospitales para con los pacientes

Durante las últimas décadas, hemos ido estableciendo distintas bases para imponerle responsabilidad a los hospitales por los daños que puedan sufrir los pacientes. Márquez Vega v. Martínez Rosado, 116 D.P.R. 397, 404-405 (1985); Hernández v. la Capital, 81 D.P.R. 1031, 1038 (1960). Primeramente, concluimos que los hospitales responden por los actos u omisiones negligentes de su personal médico o paramédico en el ámbito de sus funciones. Para ello, nos fundamentamos en la doctrina de responsabilidad vicaria decretada en el Art. 1803 del Código Civil de Puerto Rico, *supra*. Sagardía de Jesús v. Hosp. Aux. Mutuo, 177 D.P.R. 484, 512 (2009); Márquez Vega v. Martínez Rosado, *supra,* pág. 405 (1985).

Luego, resolvimos que los hospitales también responden por políticas institucionales que obstaculicen el cuidado de los pacientes. Véanse Núñez v. Cintrón, 115 D.P.R. 598 (1984); Pérez Cruz v. Hosp. La Concepción, 115 D.P.R. 721 (1984). Asimismo, hemos sostenido que los hospitales responden por los daños ocasionados por no tener disponible el equipo básico necesario para atender situaciones previsibles o por tenerlo en estado obsoleto o deficiente.

Blas Toledo v. Hospital Guadalupe, 146 D.P.R. 267, 323-327 (1998). En caso de que la responsabilidad del hospital concurra con la responsabilidad del médico, la responsabilidad del primero es solidaria con el segundo sin menoscabo de la determinación de los grados exactos de culpa en la relación interna entre ambos, a los fines de obtener reembolso directo en proporción a esa responsabilidad. Núñez v. Cintrón, *supra,* pág. 606.

Por otra parte, también hemos concluido que los hospitales responden por los médicos, dependiendo de la relación jurídica que estos tengan con el hospital. Primero, los hospitales responden vicariamente por los médicos que son sus empleados. Márquez Vega v. Martínez Rosado, *supra.* Segundo, el hospital es responsable vicariamente por los actos negligentes de los médicos que, aunque no son sus empleados, son parte de su facultad ("staff") y están disponibles para consultas de otros médicos. Íd., pág. 407; Núñez v. Cintrón, *supra,* pág. 606. Tercero, los hospitales responden conjuntamente con los concesionarios de franquicias exclusivas para prestar servicios en el hospital cuando cometan actos de impericia médica. Sagardía de Jesús v. Hosp. Aux. Mutuo, *supra,* págs. 515, 516. Son ejemplos de estos concesionarios los anestesiólogos, radiólogos y proveedores de servicios de sala de emergencia. Íd. Respecto a estos, el hospital es responsable por haber seleccionado a ese personal y tenerlo ofreciendo servicios a los pacientes. Íd.

Como última categoría, tenemos a los médicos que, sin ser empleados del hospital, gozan del privilegio de usar las

instalaciones del hospital para recluir a sus pacientes privados. Al respecto, hemos impuesto responsabilidad a los hospitales por los actos de impericia médica cometidos por estos médicos dependiendo de una distinción: si el hospital le asignó el paciente a ese médico no empleado o si se trata de un paciente privado del médico no empleado. Sagardía de Jesús v. Hosp. Aux. Mutuo, *supra,* pág. 513; Márquez Vega v. Martínez Rosado, *supra,* págs. 402-405.

Por un lado, si la persona acudió directamente al hospital en busca de ayuda médica y este le proveyó al paciente los facultativos médicos que lo atendieron, aplica la doctrina de autoridad aparente. Íd. En ese caso, el hospital responderá vicaria y solidariamente con el médico responsable del acto de impericia, sin importar que este último sea un empleado propiamente del hospital, o uno a quien el hospital le haya concedido una franquicia para brindar servicios médicos especializados a los pacientes del mismo, o uno que es miembro de la facultad ("staff") del hospital y a quien este llama en consulta para atender al paciente. Íd.

En Márquez Vega v. Martínez Rosado, *supra,* aplicamos esta doctrina a una situación de hechos en que la víctima de impericia médica era una paciente privada del médico no empleado del Hospital, que tenía el privilegio de recluir a sus pacientes privados en la institución hospitalaria. En ese caso, no hubo alegación sobre actos negligentes de empleados del Hospital, ni se alegó negligencia de la institución al concederle y mantenerle el privilegio al doctor imperito.

Tampoco se alegó que las facilidades y equipo del hospital tuvieran relación con el acto de impericia. Por ello, no le impusimos responsabilidad al Hospital y desestimamos el caso en su contra.

**B.    Acuerdo transaccional para liberar a uno o varios cocausantes del daño**

Una vez se impone responsabilidad solidaria entre un hospital y los médicos que incurrieron en impericia, la víctima puede otorgar un contrato de transacción, ya sea con uno de los codemandados, con varios o con todos. La transacción es un acuerdo mediante el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la prolongación de un pleito o ponen término al que ya había comenzado. Art. 1709 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 4821.

Hemos expresado que los elementos que constituyen un acuerdo transaccional son: 1) una relación jurídica incierta litigiosa; 2) la intención de los contratantes de componer el litigio y sustituir la relación dudosa por otra cierta e incontestable; y 3) las recíprocas concesiones de las partes. Con relación a este último elemento, se requiere que cada uno de los contratantes reduzca y sacrifique a favor de otro una parte de sus exigencias a cambio de recibir una parte de aquello objeto del litigio. Mun. de San Juan v. Prof. Research, 171 D.P.R. 219, 239 (2007); Neca Mortg. Corp. v. A. & W. Dev. S.E., 137 D.P.R. 860, 870 (1995).

Asimismo, hemos establecido que, al interpretar un contrato de transacción, aplican las normas generales sobre la interpretación de contratos en lo que no sean incompatibles con una norma particular de interpretación. En específico, aplican las normas decretadas sobre la necesidad de descubrir la verdadera intención de los contratantes cuando esta no surge claramente de los términos del contrato. Sucn. Román v. Shelga Corp., 111 D.P.R. 782, 789 (1981); Merle v. West Bend Co., 97 D.P.R. 403, 409-411 (1969).

En el contexto de responsabilidad extracontractual y solidaridad legal, expresamos recientemente que el que una víctima libere de responsabilidad a uno de los codemandados mediante un acuerdo transaccional no necesariamente significa que relevó a los otros codemandados, si esto último no está dispuesto claramente en el acuerdo. Por lo tanto, la víctima podría continuar su reclamación contra los demás codemandados. Sagardía de Jesús v. Hosp. Aux. Mutuo, *supra*; U.S. Fire v. A.E.E., 174 D.P.R. 846, 855 (2008).

Asimismo, hemos resuelto que los efectos de este tipo de contrato transaccional dependen de lo pactado entre las partes, en lo que respecta a la relación interna entre codemandados solidarios y la relación externa entre codemandados y demandantes. Lo decisivo es la intención de las partes sobre los efectos de la transacción. Así, cuando surge claramente del acuerdo transaccional que el demandante libera a un codemandado de toda responsabilidad que pueda surgir del evento que causó el daño, se entenderá que ese codemandado ha sido liberado ante el demandante (relación

externa) y ante los demás codemandados (relación interna). En ese caso, el demandante asumirá el grado de responsabilidad que el tribunal finalmente atribuya al codemandado liberado. Sagardía de Jesús v. Hosp. Aux. Mutuo, *supra*; Blas Toledo v. Hospital Guadalupe, 167 D.P.R. 439, 450-453 (2006); Szendrey v. Hospicare Inc., 158 D.P.R. 648, 655-656 (2003).

Por su parte, los demás cocausantes no liberados sólo responderán por el porcentaje de responsabilidad que quede luego de restar el monto correspondiente a la porción de responsabilidad del cocausante liberado, y no por el monto total de la indemnización. A su vez, esto significa que el resto de los cocausantes no pueden instar la acción de nivelación contra el cocausante que fue liberado de responsabilidad. Sagardía de Jesús v. Hosp. Aux. Mutuo, *supra*; U.S. Fire v. A.E.E., *supra*.

En cierta medida, ambas partes asumen un riesgo en este tipo de acuerdo transaccional. Por un lado, el demandante asume el riesgo de que el monto correspondiente a la porción de responsabilidad del cocausante liberado sea mayor a lo recibido a cambio del relevo de responsabilidad. Por otro lado, el cocausante liberado asume el riesgo de que el monto correspondiente a su porción de responsabilidad sea menor a lo pagado a cambio de su exoneración. Además, si el cocausante liberado finalmente no es encontrado incurso en responsabilidad, no tendrá derecho a recobrar lo pagado. Tampoco podrán los cocausantes no liberados exigir que se les descuente lo pagado por el cocausante liberado, pero hallado

no responsable. En este caso, el demandante percibe la ganancia. Sagardía de Jesús v. Hosp. Aux. Mutuo, *supra.*

Por otro lado, el contrato transaccional puede liberar a un cocausante sólo en la relación externa, sin relevarle de la responsabilidad que pueda tener con los demás cocausantes en la relación interna. Íd. Esto tendrá el efecto de que se reducirá del monto de la sentencia la cantidad obtenida mediante la transacción, pero no se reducirá la cantidad equivalente al grado de responsabilidad del cocausante liberado. Íd. Así, el demandante podrá reclamar a cualquiera de los demás cocausantes la cantidad restante del monto correspondiente a la indemnización otorgada por el tribunal, sin tener que restar el monto equivalente al grado de responsabilidad adjudicado al codemandado liberado. Consecuentemente, el demandante no podrá recobrar la totalidad del monto de la sentencia más la cantidad obtenida mediante la transacción. Respecto a la relación interna, los cocausantes no liberados podrían instar una acción de nivelación en contra del cocausante que fue liberado sólo en la relación externa. Íd.; U.S. Fire Insurance v. A.E.E., *supra*; Blas Toledo v. Hospital Guadalupe, *supra.*

En cuanto al grado de responsabilidad entre cocausantes, hemos establecido que el juez sentenciador deberá fijarlo al dictar sentencia. Si no lo hace, aplicará la presunción de igualdad de culpas. Sánchez Rodríguez v. López Jiménez, 118 D.P.R. 701, 707-708 (1987). No obstante, cuando se libera de responsabilidad a un cocausante mediante un acuerdo de transacción en medio de una acción en daños y perjuicios,

antes de que se dicte sentencia, el foro primario deberá determinar en su sentencia el monto líquido total de los daños ocasionados a la víctima por todos sus cocausantes y deducirá del monto total el porcentaje de responsabilidad del codemandado liberado. Szendrey v. Hospicare Inc., *supra,* págs. 658-59.

Asimismo, el foro primario deberá determinar el grado de responsabilidad de cada uno de los cocausantes no liberados de responsabilidad, para efectos de la nivelación posterior entre ellos. Íd. De no ser así, existiría como alternativa la acción independiente de nivelación. Soc. de Gananciales v. Soc. de Gananciales, 109 D.P.R. 279, 282-283 (1979).

### C.  Cosa juzgada

Por otra parte, la doctrina de cosa juzgada, decretada en el Art. 1204 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3343, impide que, luego de emitida una sentencia en un pleito anterior, las mismas partes relitiguen en un pleito posterior las mismas causas de acción y cosas, las controversias ya litigadas y adjudicadas y aquéllas que pudieron haber litigado. Mun. de San Juan v. Bosque Real S.E., 158 D.P.R. 743, 769 (2003); Acevedo v. Western Digital Caribe, Inc., 140 D.P.R. 452, 464 (1996). Para que se active la presunción de cosa juzgada en otro juicio, se requiere que entre el caso resuelto mediante sentencia y el caso en que se invoca la misma concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad en que lo fueron. 31 L.P.R.A. sec. 3343. Véanse,

también: <u>Méndez vs. Fundación</u>, 165 D.P.R. 253, 267 (2005); <u>Pagán Hernández v. U.P.R.</u>, 107 D.P.R. 720, 732 (1978).

La doctrina de cosa juzgada se fundamenta en consideraciones de orden público y necesidad. Por un lado, vela por el interés gubernamental en que se finalicen los pleitos. También, busca dar la debida dignidad a los fallos de los tribunales. Por otro lado, se interesa no someter a los ciudadanos a las molestias de tener que litigar dos veces una misma causa. <u>Rodríguez Rodríguez v. Colbert Comas</u>, 131 D.P.R. 212, 218-219 (1992); <u>Pérez v. Bauzá</u>, 83 D.P.R. 220, 225 (1961). No obstante, la aplicación de la doctrina de cosa juzgada no procede de forma inflexible y automática cuando hacerlo derrotaría los fines de la justicia o consideraciones de orden público. <u>Parrilla v. Rodríguez</u>, 163 D.P.R. 263, 269 (2004).

III.

**A.    Responsabilidad de los hospitales para con los pacientes**

El foro de primera instancia determinó, en reconsideración, que HIMA era responsable solidariamente por los actos de los médicos codemandados. Esta determinación surgió a raíz del planteamiento que las demandantes hicieron al amparo de la doctrina de autoridad aparente, en su moción de reconsideración.

Con relación a los doctores Tirado Menéndez y Santana, surge del expediente que no son empleados de HIMA. El doctor Tirado Menéndez fue contratado por la corporación que opera la Sala de Emergencia de HIMA y el doctor Santana tenía

privilegios para atender a sus pacientes privados en HIMA. Al ser así, debemos determinar si HIMA es responsable vicaria y solidariamente por los actos de impericia de ambos, al amparo de la doctrina de autoridad aparente.

Surge del expediente que la señora Iris Fonseca acudió al Hospital mediante la Sala de Emergencia, sin ser previamente una paciente privada de los galenos codemandados. Asimismo, surge que la señora Iris Fonseca era paciente de otro hospital y que fue llevada a HIMA por ser el hospital más cercano. Allí, HIMA le proveyó los servicios de ambos galenos. Siendo así, conforme la doctrina de autoridad aparente, HIMA responde vicaria y solidariamente junto a los doctores codemandados.

Nos queda considerar si se le impuso a HIMA responsabilidad directa por su negligencia propia. Como dijimos anteriormente, este tipo de responsabilidad puede imponerse cuando el hospital no fue cuidadoso al momento de conceder y mantener el privilegio a médicos no empleados para recluir a sus pacientes privados en las instalaciones hospitalarias, cuando no cuenta con el equipo necesario para atender situaciones previsibles o lo tiene en estado defectuoso, o cuando implanta políticas administrativas que obstaculicen la provisión de servicios médicos. Al respecto, el Tribunal de Primera Instancia no impuso en su sentencia responsabilidad alguna a HIMA por sus propios actos.

Respecto a la resolución certificada en 2009, esta se limitó a reiterar la doctrina de responsabilidad corporativa que impone la solidaridad a los Hospitales por su propia

negligencia. Al respecto, señaló que las demandantes nunca presentaron evidencia alguna de negligencia por parte de HIMA al momento de supervisar a los médicos codemandados o sobre actos previos de impericia médica de estos. Finalmente, recordó que había concluido en la sentencia que advino final y firme que HIMA no tenía responsabilidad porque sus empleados actuaron bajo las directrices de los doctores Tirado y Santana. Así, denegó la solicitud de embargo presentada por las demandantes.

Por otra parte, no surge de las determinaciones de hecho del foro primario o del expediente evidencia alguna sobre negligencia independiente de HIMA, falta de equipo necesario o implantación de políticas administrativas que obstaculizaran el servicio médico. Consecuentemente, el foro primario no le impuso a HIMA responsabilidad directa, ya que no incurrió en negligencia propia.

Por todo lo anterior, es forzoso concluir que el foro de primera instancia sólo impuso a HIMA responsabilidad vicaria por los actos imperitos de los galenos codemandados. Por ello, no procedía imponerle grado de responsabilidad por actos independientes de negligencia.

Habiendo concluido esto, debemos determinar si el acuerdo transaccional liberó de responsabilidad a HIMA.

**B.   Acuerdo transaccional para liberar a uno o varios cocausantes del daño**

El contrato de transacción fue suscrito por las demandantes para liberar de toda responsabilidad a los doctores Tirado Menéndez y Santana, así como a S.I.M.E.D.

Conforme a ello, en el inciso seis (6) del acuerdo transaccional, las demandantes los relevaron de responsabilidad

> […]**por cualquier obligación** que pudiese imponerse a ellos por los daños alegados o no, que surjan del evento que propició la presentación de la demanda. **Bajo ningún concepto**, las partes comparecientes pagarán cantidad alguna adicional a las especificadas en este documento. (Énfasis suplido).

Consiguientemente, la parte demandante dio por terminado el caso en cuanto a los doctores Tirado Menéndez y Santana, así como a S.I.M.E.D.

Al analizar este acuerdo de transacción, concluimos que la parte demandante los liberó de responsabilidad, tanto en la relación externa, como en lo que respecta a HIMA en la relación interna. El texto del referido inciso seis (6) utiliza un lenguaje abarcador y extensivo al momento de describir las obligaciones por las cuales libera a los médicos codemandados. De la misma manera, este inciso usa un lenguaje que excluye absolutamente la posibilidad de que los codemandados liberados paguen alguna cantidad adicional. Además, **el inciso siete (7) establece que HIMA no será responsable de forma alguna por los daños causados por los doctores codemandados.** Esto refuerza nuestra conclusión de que las demandantes liberaron a los médicos codemandados tanto en la relación externa como en la interna. Así, las demandantes se subrogaron en el lugar de los cocausantes liberados y asumieron su grado de responsabilidad.

En cuanto a HIMA, la parte demandante se reservó el derecho de continuar el trámite de ejecución de sentencia en

su contra. Sin embargo, aclaró en el inciso siete (7) del acuerdo que

> HIMA, el cual queda en el pleito y contra quien prosiguen los trámites post-sentencia, no será responsable de forma alguna por los daños que pudieran ser atribuibles a y/o hayan sido causados por los codemandados comparecientes. **HIMA sólo responderá a la parte demandante por los daños causados por sus propias acciones u omisiones negligentes, las acciones u omisiones negligentes de sus empleados** y/o de aquellas personas por las cuales deba responder bajo cualquier doctrina legal vigente en Puerto Rico, o por la participación que en su momento se establezca compete a HIMA pagar según la sentencia emitida por el Tribunal de Primera Instancia.

Al respecto, debemos tener presente que el Tribunal de Primera Instancia, en su resolución del año 2007, determinó que HIMA era responsable solidariamente **"por las actuaciones de los médicos autorizados a prestar servicios profesionales en el Hospital"**. Esto, luego de haber resuelto mediante sentencia que la muerte de la señora Iris Fonseca se debió a la impericia médica de los doctores Tirado Menéndez y Santana. Fue precisamente en cuanto a los actos negligentes de los galenos codemandados que el inciso siete (7) del acuerdo transaccional estipuló que HIMA no será responsable de forma alguna.

Ahora bien, las demandantes sí se reservaron la facultad de proseguir el pleito contra HIMA por los daños causados por sus propias acciones u omisiones negligentes o por las acciones u omisiones negligentes de sus empleados. No obstante, nunca se ofreció prueba de que HIMA o sus empleados incurrieron en acciones u omisiones negligentes.

El foro primario resolvió que las enfermeras y el personal del Hospital siguieron las instrucciones de los médicos, por lo que HIMA no respondía vicariamente por sus actos u omisiones negligentes. Asimismo, en la resolución del año 2009, el foro de instancia encontró que no se presentó evidencia alguna en cuanto a la supervisión o falta de ella por parte de los facultativos médicos, empleados de HIMA, de los doctores Tirado Menéndez y Santana. Tampoco se presentó evidencia sobre actos previos de impericia profesional de esos doctores. Así pues, el foro primario concluyó nuevamente que HIMA no tenía responsabilidad porque sus empleados actuaron bajo las directrices de los doctores Tirado Menéndez y Santana. Por lo tanto, el tribunal sentenciador fue consistente al determinar que HIMA no incurrió en negligencia independiente de la negligencia de los médicos codemandados. Por su parte, las demandantes tampoco nos han puesto en posición de determinar que HIMA incurrió en negligencia independiente a la de los médicos codemandados.

Al aplicar el acuerdo transaccional a estos hechos, vemos que las demandantes liberaron de toda responsabilidad a los médicos codemandados por la muerte de la señora Iris Fonseca, tanto en la relación externa frente a las demandantes como en la relación interna frente a HIMA. Al ser así, las demandantes se subrogaron en el lugar de los codemandados liberados y asumieron toda responsabilidad que les fuera adjudicada. Respecto a HIMA, las demandantes se reservaron la facultad de proseguir la acción en su contra, pero únicamente por la negligencia propia de HIMA o de sus empleados,

independiente de la negligencia de los médicos codemandados. Como discutimos anteriormente, el foro de instancia no le adjudicó grado de responsabilidad a HIMA, ni encontró que hubiera incurrido en negligencia. Al contrario, le impuso responsabilidad solidaria solo por los actos negligentes de los médicos codemandados. Al estos últimos haber sido relevados de toda responsabilidad, nos vemos forzados a concluir que las demandantes también relevaron a HIMA, **pues este era responsable solidariamente solo por los actos negligentes de los médicos codemandados y no incurrió en negligencia propia.**

Habiendo resuelto lo anterior, nos corresponde determinar si el Tribunal de Apelaciones erró al aplicar la doctrina de cosa juzgada a este caso.

### C.   Cosa juzgada

El foro primario no impuso responsabilidad a HIMA. Luego, el foro de primera instancia determinó en reconsideración que HIMA era solidaria y vicariamente responsable por las actuaciones de los médicos autorizados a prestar servicios profesionales en el Hospital. Ello, al amparo de la doctrina de autoridad aparente. Esa determinación de solidaridad se tornó final y firme.

Luego, en la resolución del 2009, el foro primario denegó la solicitud de embargo contra HIMA. En esta resolución, se limitó a discutir someramente la responsabilidad solidaria de los hospitales por sus propias acciones. La resolución no discutió la responsabilidad de los hospitales al amparo de la doctrina de autoridad aparente. En su parte expositiva,

señaló que nunca se presentó evidencia de negligencia propia por parte de HIMA. Así, denegó el embargo solicitado. Para esta determinación, el Tribunal de Primera Instancia tuvo ante su consideración el acuerdo transaccional. Asimismo, HIMA alegó en oposición al embargo que, aunque se le impuso responsabilidad solidaria junto a los doctores codemandados, no fue cocausante de los daños ocasionados a las demandantes y no incurrió en negligencia propia.

Por lo tanto, al considerar los planteamientos de HIMA, el foro primario no reconsideró su imposición inicial de responsabilidad solidaria a HIMA al amparo de la autoridad aparente, sino que aplicó correctamente el acuerdo transaccional, según interpretado anteriormente. Es decir, el foro primario se limitó a recalcar que no se le impuso responsabilidad a HIMA por sus actos propios, lo que significa que las demandantes no tienen una causa de acción contra HIMA en virtud de la liberación total de responsabilidad que hicieron a los únicos cocausantes del daño. Así pues, concluimos que no aplica la doctrina de cosa juzgada a este caso, pues no se trata de una reconsideración de un asunto resuelto mediante dictamen final y firme. Lo contrario sería un fracaso de la justicia, al imponerle responsabilidad adicional a un codemandado que ya fue liberado de responsabilidad por las demandantes mediante un acuerdo transaccional.

IV.

Por los fundamentos que anteceden, se revoca la sentencia del Tribunal de Apelaciones y se reinstala la resolución

recurrida del Tribunal de Primera Instancia que denegó un embargo contra HIMA.

Se dictará sentencia de conformidad.


                              Federico Hernández Denton
                                   Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Miriam N. Fonseca, Rosa M.
Fonseca y Felicita Rodríguez

  Recurridas

    v.                          AC-2010-62      Certiorari

Hospital Interamericano de
Medicina Avanzada (HIMA);
Dr. Guillermo Tirado Menéndez;
Dr. Arnulfo Santana y SIMED

  Peticionarios




SENTENCIA


    San Juan, Puerto Rico, a 5 de enero de 2012.

    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se expide el auto de certiorari, se revoca la sentencia del Tribunal de Apelaciones y se reinstala la resolución recurrida del Tribunal de Primera Instancia que denegó un embargo contra HIMA.

    Lo acordó el Tribunal y certifica la Secretaria del Tribunal. Los Jueces Asociados señor Rivera García y señor Feliberti Cintrón concurren sin opinión escrita.



                    Larissa Ortiz Modestti
            Secretaria del Tribunal Supremo, Interina